IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CURTIS CARTER, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 16-2441 (JBS-AMD) |
| FCI FORT DIX MEDICAL DIRECTOR & WARDEN, dba FORT DIX MEDICAL DEPARTMENT; FBOP NE REGIONAL DIRECTOR, dba FBOP REGIONAL OFFICE, | **OPINION** |
| Defendants. | |

APPEARANCES:

Curtis Carter, Plaintiff Pro Se
#08717068
Elkton – Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 10
Lisbon, OH 44432

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

Before the Court is Plaintiff Curtis Carter's ("Plaintiff") submission of a civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Docket Entry 1; motion to quash delay of service, Docket Entry 8; and motion to appear via telephone conference, Docket Entry 9. At this time, the Court must review the complaint to determine whether it should be dismissed as

frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint will proceed in part. Plaintiff's motion to quash delay of service and motion to appear via telephone conference are dismissed as moot and denied, respectively.

## II. BACKGROUND

Plaintiff brings this civil rights action against the warden and medical director of FCI Fort Dix, New Jersey, and the Bureau of Prisons ("BOP") Northeast Regional Director. The following factual allegations are taken from the complaint and are accepted for purposes of this screening only. The Court has made no findings as to the truth of Plaintiff's allegations.

Plaintiff is a convicted and sentenced federal prisoner previously confined at Fort Dix. At the time he entered the BOP's custody, Plaintiff had "a preexisting condition from an Accident which caused him debilitating pain and suffering until he received chiropractic care on his own dime from professionals and his own Physician." Complaint ¶ 2. He requested continuance of his chiropractic care upon his arrival at Fort Dix. *Id*. ¶ 3. In an affidavit attached to the complaint, he states his physician, Dr. Dunlop, recommended continuous chiropractic therapy due to degeneration in Plaintiff's spine. Affidavit,

2

Complaint at 13. His physician "made a professional recommendation to have [Plaintiff] seen by a contract chiropractic practitioner based on his training and knowledge of [Plaintiff's] serious medical needs. . . . For his recommendation, Dr. Dunlop was vehemently admonished and reprimanded by a Regional official . . . ." *Id.* Plaintiff further alleges the medical staff at Fort Dix "gave him a lot of run-around but never quite got around to actually providing him the care and treatment that he so desperately needed," *id.* ¶ 4, and that he was "scheduled for procedures which Fort Dix avoided providing and because of that they relied on the pretense that those procedures they refused to take care of had to be done before he could move to the next step in the evaluation." *Id.* ¶ 5. Plaintiff indicates he submitted grievances to the Northeast Regional Office but "they simply overlooked it or are and were too backlogged and bogged down to give the matter the attention deserved and he went without such aid to date suffering." *Id.* ¶ 6.

Plaintiff began receiving chiropractic treatments after being transferred to FCI Elkton, Ohio. *Id.* ¶ 13. He states that he was informed by a "medical Staffer" that "basically the regional authorities strongly discouraged him ever again putting an inmate in for such therapy with little explanation of what legitimate penological or medical restriction purpose was

3

related to their wanting to refuse such therapy to those who might need it whether they require it or not." *Id.* ¶ 14. He alleges "[o]n information and belief all along it has been the unspoken policy of regional administration under and affiliated with the FBOP NE REGIONAL OFFICE and its DIRECTOR(s) to refuse proper medical attention even though an inmate will be left to suffer indefinitely without it." *Id.* ¶ 15.

## III. STANDARD OF REVIEW

### A. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. §§ 1915, 1915A and 42 U.S.C. § 1997e because Plaintiff is a prisoner proceeding *in forma pauperis* and is seeking redress from government officials about the conditions of his confinement.

4

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, they "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

---

[1] "[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions." *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

**B. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics***

In *Bivens*, the Supreme Court created a federal counterpart to the remedy created in 42 U.S.C. § 1983. *See Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) ("*Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials"), *cert. denied*, 543 U.S. 1049 (2005). In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006); *see also Collins v. F.B.I.*, Civ. No. 10-3470, 2011 WL 1627025, at *6 (D.N.J. Apr. 28, 2011) ("The Third Circuit has recognized that *Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials and thus the analysis established under one type of claim is applicable under the other.").

**IV. ANALYSIS**

Plaintiff brings his claims against the Fort Dix Warden, Fort Dix Medical Director, and the BOP NE Regional Director. He alleges ethics and "corrections professional laws" violations; unconstitutional conditions of confinement due to overcrowding;

medical malpractice and negligence; denial of adequate medical care; and Privacy Act violations.[2]

## A. Ethics Violations

Plaintiff appears to be attempting to raise claims of ethical violations by the medical professionals and corrections officers at Fort Dix:

> Ethics and CORRECTIONS professional laws apply both state and federal and to have failed to treat CARTER for the reasons and by the manner described herein and to further be developed before the Court shows an ETHICS agreement VIOLATION, implied employment contract breach, and the CORRECTION OFFICER laws of the state forbid that the accused who are in the business of CORRECTIONS treat or allow any to treat CARTER in the manner described above.

Complaint ¶ 20. Apart from professional negligence claims, there are no federal or state civil causes of action for violations of professional ethics.[3] *See Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 282 (3d Cir. 2001) (citing *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505, 514 (N.J. 1980) for proposition that the Hippocratic Oath "does not contain a clear mandate of public policy" upon which a cause of action may be based); *Baxt v. Liloia*, 714 A.2d 271, 277 (N.J. 1998) (holding

---

[2] The claims are dismissed with prejudice to the extent Plaintiff is seeking damages from defendants in their official capacities as they are entitled to sovereign immunity. *See Hairston v. Miller*, 646 F. App'x 184, 187 (3d Cir. 2016) (citing *Treasurer of N.J. v. U.S. Dep't of the Treasury*, 684 382, 295 (3d Cir. 2012)).

[3] It is not clear to the Court what "corrections professional laws" Plaintiff is referencing in his complaint.

Rules of Professional Conduct for attorneys "are not designed to establish standards for civil liability"). Such a claim would ordinarily be raised with the relevant licensing authority. *See, e.g.,* State Board of Medical Examiners, *available at* http://www.njconsumeraffairs.gov/bme (last visited Mar. 13, 2017) ("New Jersey's Board of Medical Examiners is responsible for protecting the public's health and safety by determining qualifications of applicants for licensure, establishing standards for practice, and disciplining licensees who do not adhere to those requirements.").

Evidence of violations of the relevant ethics rules are relevant as to whether there was professional negligence, however. Therefore the freestanding ethics violation claims are dismissed for failure to state a claim, but the Court shall consider the allegations in connection with Plaintiff's malpractice and negligence claims.

To the extent Plaintiff is attempting to bring an action based on a breach of defendants' employment contracts, Complaint ¶ 20, that claim must also be dismissed. "Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to [the government], since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the [government] might have with the prison officials." *Brown v. Sadowski*, No. 08-4489, 2009 WL 2182604, at

8

*5 (D.N.J. July 20, 2009) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)); *accord Maqbool v. University Hosp. of Medicine & Dentistry of New Jersey*, 2012 WL 2374689, at *4 (D.N.J. June 13, 2012). The breach of contract claims are dismissed with prejudice.

## B. Conditions of Confinement – Overcrowding

Plaintiff also asserts overcrowding in the BOP "coupled with BOP Fiscal goals and monetary/budget concerns, have resulted in an inability of the BOP and its directors to care for the Aging and injured populace of the BOP and under their custody and care." Complaint ¶ 21.

"The Eighth Amendment requires prison officials to provide 'humane conditions of confinement.'" *Smith v. Bolava*, 632 F. App'x 683, 686-87 (3d Cir. 2015) (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010)). "[D]eficiencies and inadequacies in prison conditions do not necessarily violate the Eighth Amendment. The amendment is violated only where an inmate is deprived of 'the minimal civilized measure of life's necessities.'" *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In the case of overcrowding claims, the Court must assess the totality of the circumstances to determine whether there is an Eighth Amendment violation. *Id.* at 426-27 (citing *Union County Jail Inmates v. Di Buono*, 713 F.2d 984 (3d

Cir. 1983)) "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996).

Aside from his claims of being denied adequate medical care, Plaintiff has not provided the Court with any other facts supporting his allegation that Fort Dix is overcrowded. Allegations that "are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiff has not set forth any information, such as the number of inmates in the facility or his cell, for the Court to consider in its assessment of the totality of the circumstances. *Iqbal*'s "'plausibility' standard does not require probability, but it does demand more than a sheer possibility that the defendant acted unlawfully." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 72 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). More information is needed regarding Plaintiff's conditions of confinement in order for there to be a plausible claim for overcrowding.

As Plaintiff may be able to provide facts supporting this claim, this claim is dismissed without prejudice. Plaintiff may

10

move to amend his complaint to address the deficiencies noted
the by Court. Fed. R. Civ. P. 15.

## C. Medical Malpractice and Negligence

The complaint also seeks to bring medical malpractice and
negligence claims against defendants. Complaint § III. These
claims may only be brought against the United States under the
Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2671–
2680. *See* 28 U.S.C. § 2679(b)(1); *Osborn v. Haley*, 549 U.S. 225,
229 (2007) ("The Federal Employees Liability Reform and Tort
Compensation Act of 1988, commonly known as the Westfall Act,
accords federal employees absolute immunity from common-law tort
claims arising out of acts they undertake in the course of their
official duties."); *Lomando v. United States*, 667 F.3d 363, 378
(3d Cir. 2011) (citing H.R. Rep. No. 100–700, at 6, 1988
U.S.C.C.A.N. 5945 at 5950). The Court therefore construes the
medical malpractice and negligence claims as being brought
against the United States.

Before filing a suit in federal court, a plaintiff suing
under the FTCA must present the offending agency, in this case
the BOP, with notice of the claim, including a "sum certain"
demand for monetary damages. *White-Squire v. U.S. Postal Serv.*,
592 F.3d 453, 457 (3d Cir. 2010). "Because the requirements of
presentation and a demand for a sum certain are among the terms
defining the United States's consent to be sued, they are

jurisdictional." *Id.* (citing *United States v. Sherwood*, 312 U.S. 584, 587 (1941)). These requirements cannot be waived. *Id.* (citing *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971)). Plaintiff includes a document entitled "Notice of Claim of Harm and Injury" that was apparently sent to the BOP Regional Office. Complaint at 11. Giving Plaintiff the benefit of all reasonable inferences, the Court concludes for screening purposes only that he has met this filing requirement. The Court, however, lacks jurisdiction over Plaintiff's FTCA claims.

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015). Exhaustion occurs when either the agency denies the claim, in which case plaintiffs must file suit within six months, or six months have passed without a written denial of the claim. 28 U.S.C. §§ 2401(b), 2675(a). The exhaustion requirement is mandatory, jurisdictional, and applicable to all FTCA plaintiffs regardless of their pro se or incarcerated status. *Shelton*, 775 F.3d at 569; *Wadhwa v. Nicholson*, 367 F. App'x 322, 325 n.5 (3d Cir. 2010) ("*McNeil* clarified that administrative exhaustion must be complete *before* instituting suit, and that this procedural rule is a requirement to which *all* litigants must adhere." (emphasis in original)).

12

Here, Plaintiff's notice of claim form is dated January 11, 2016. Complaint at 11. The complaint was received in the mail room of the United States District Court for the District of Columbia on February 23, 2016 and filed on April 1, 2016. *Id.* at 1.[4] Plaintiff waited just over one month after submitting his claim before submitting his complaint. It is clear from the face of the complaint that he failed to follow the jurisdictional requirements of the FTCA. *See McNeil*, 508 U.S. at 112 (exhaustion that occurs after a complaint is filed does not satisfy requirements of FTCA); *Zierke v. United States*, No. 16-1734, 2017 WL 541407, at *2 (3d Cir. Feb. 10, 2017) (citing *McNeil*); *Hurt v. Lappin*, 729 F. Supp. 2d 186, 190 (D.D.C. 2010) ("Even though the six-month period has now expired, the relevant analysis is whether [plaintiff] had exhausted his administrative remedy at the time he filed his complaint."). The Court must therefore dismiss the medical malpractice and negligence claims for lack of jurisdiction.

**D. Denial of Medical Care**

Plaintiff further alleges defendants violated his constitutional right to adequate medical care by denying him

---

[4] The complaint was transferred to this district on April 29, 2016, received in the Clerk's Office on May 2, 2016, and officially filed on June 23, 2016. Even using the latest possible date, June 23, 2016, Plaintiff was still several weeks away from the end of the six-month waiting period at the time he initiated this action.

chiropractic care. The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted). Plaintiff indicates he was diagnosed in 2005 with spine degeneration and with "bridging ventral syndesmophytes" and "two small nodular structures overlying the right mid to lower abdomen" in 2010. Affidavit. As a result of these conditions, Plaintiff states his primary physician recommended chiropractic care and physical therapy. *Id.* The Court therefore finds Plaintiff has sufficiently alleged a serious medical need.

The second element of the *Estelle* test requires an inmate show that prison officials acted with deliberate indifference to his serious medical need. "The hallmark of an Eighth Amendment violation arises when such medical treatment, or the withholding

14

of medical treatment, is accompanied by knowing indifference to the pain or risk of serious injury this will cause, such as by 'persistent conduct in the face of resultant pain and risk of permanent injury.'" *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000) (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)). Deliberate indifference may be found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. *See Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Construing the complaint liberally and giving Plaintiff the benefit of all reasonable inferences, he has sufficiently alleged an Eighth Amendment claim against the BOP Northeast Regional Director and Fort Dix Medical Director. Specifically, he alleges that the Regional Director instituted a policy of denying needed medical care for non-medical reasons, *i.e.*, the financial burden of providing care, and that he, or someone at his direction and in line with the policy, interfered with Plaintiff's medical treatment by verbally reprimanding Plaintiff's doctor for requesting chiropractic treatment and forbidding any future treatment. Complaint ¶¶ 14-16, 31; *see*

15

*also* Affidavit in Support. As a result of this policy, the Fort Dix Medical Director denied Plaintiff treatment for his serious medical need and instead "persist[ed] in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Rouse*, 182 F.3d at 197 (quoting *White*, 897 F.2d at 109–11). The complaint shall be permitted to proceed against these defendants.

Plaintiff has not sufficiently pled an Eighth Amendment violation by the Fort Dix Warden, however. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior [and] a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). To state a claim for supervisory liability for denial of medical care, a plaintiff must allege facts indicating that "a state official, by virtue of his or her *own* deliberate indifference to *known* deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur." *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 320 (3d Cir. 2014) (emphasis in original), *rev'd on other grounds sub nom Taylor v. Barkes*, 135 S. Ct. 2042

16

(2015). Plaintiff does not mention the warden in the factual portion of his complaint at all, and his allegations regarding the creation of the unconstitutional "environment" are directed at the Regional Director.

Plaintiff has also failed to state a claim against the warden to the extent the complaint could be read as basing liability on the warden's failure respond to Plaintiff's grievances. Complaint ¶ 6. *See Davis v. Samuels*, 608 F. App'x 46, 48-49 (3d Cir. 2015) (holding sending a grievance to the office of the Director of the Federal Bureau of Prisons does not establish personal liability); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). As Plaintiff may be able to allege facts supporting the warden's liability, this claim is dismissed without prejudice.[5]

---

[5] In the event Plaintiff wishes to pursue those claims that have been dismissed without prejudice, he may move to amend his complaint in accordance with Federal Rule of Civil Procedure 15. Any motion to amend must be accompanied by a proposed amended complaint. Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, *Federal Practice and Procedure* 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.*

**E. Privacy Act**

Plaintiff also appears to raise a claim under the Privacy Act, 5 U.S.C. § 552a, for inaccurate and/or falsified medical records. Complaint ¶ 12. He alleges his records are being "rigged and adverse decisions have been made thereon for reasons other than those articulated in the records . . . ." *Id.* ¶ 37. "Such claims are exclusively 'within the remedial scheme of the Privacy Act [5 U.S.C. § 552a],' which authorizes a cause of action to be brought against federal agencies only." *Lynn v. Lappin*, 593 F. Supp. 2d 104, 106 (D.D.C. 2009) (alteration in original) (quoting *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003)). Even if the Court were to construe the claim as being brought against the BOP, it would still have to dismiss it.

"The Privacy Act 'governs the government's collection and dissemination of information and maintenance of its records [and] generally allows individuals to gain access to government records on them and to request correction of inaccurate records.'" *Kates v. King*, 487 F. App'x 704, 706 (3d Cir. 2012) (quoting *Perry v. Bureau of Prisons*, 371 F.3d 1304, 1304–05 (11th Cir. 2004)) (alteration in original). An individual may bring a lawsuit under the Privacy Act "when an agency intentionally or willfully fails to comply with the requirements in such a way as to have an adverse effect on an individual."

18

*Lynn*, 593 F. Supp. 2d at 106–07 (citing 5 U.S.C. § 552a (g)(1)(C)(D), (g)(4)). However, the BOP's central record system, including the Inmate Physical and Mental Health Record System, is entirely exempt from the access and amendment requirements and the civil remedies provision of the Privacy Act. 28 C.F.R. § 16.97(a)(5); *see also Brown v. Bureau of Prisons*, 498 F. Supp. 2d 298, 302 (D.D.C. 2007) ("Plaintiff effectively is barred from obtaining any remedy, including damages, for BOP's alleged failure to maintain records pertaining to him with the requisite level of accuracy."). This claim is therefore dismissed with prejudice.

**F. Preliminary Injunction**

Plaintiff asks this Court to issue an preliminary injunction requiring the BOP to provide him chiropractic services. "Plaintiffs requesting prospective injunctive relief must allege a real and immediate threat of future injury." *Owens v. Armstrong*, 171 F. Supp. 3d 316, 334 (D.N.J. 2016) (internal citation and quotation marks omitted). "Allegations of exposure to illegal conduct in the past alone, without a showing of continuing adverse effects, do not demonstrate a case or controversy entitling a plaintiff to prospective injunctive relief." *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 479 (D.N.J. 2001) (internal citations omitted). A plaintiff must be able to show that a real and imminent harm will occur; a

mere possibility of future harm will not suffice. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 300–01 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2025 (2013).

Plaintiff states in his complaint that "FCI Elkton Medical Department recently put CARTER in for therapy with a Local or subcontractor Chiropractor for therapy akin to what he received when he was free and Recommended that that is what was needed." Complaint ¶ 13. He has therefore not sufficiently pled that he will be subject to future injury or suffer irreparable harm if the injunction is denied. The request for injunctive relief is dismissed without prejudice.

## G. Motion to Quash Delay of Service and for Telephonic Appearance

Plaintiff filed a motion stating this Court incorrectly cited to 28 U.S.C. § 1915 in its order granting his *in forma pauperis* application. He argues the complaint should not be screened under this statute as he is "suing the accused actors and their insurer who are bound to pay. In essence it is an action for damages specifically against the insured and risk management carriers claims manager ultimately." Motion to Quash Delay of Service. "[T]he only way that the accused could be deemed responsible ultimately for their own liability is if they have acted deficiently under the contract with their insurer and

20

employers such that they did not timely report the claims as required by their tacit or express agreements to do so." *Id.*

The complaint alleges Plaintiff experienced medical malpractice, negligence, Privacy Act violations, and unconstitutional conditions of confinement at the hands of federal employees. These actions must be brought against either the United States under the FTCA or against the individual federal employees pursuant to *Bivens*. The Court is required to screen these claims under §§ 1915, 1915A, and 42 U.S.C. § 1997e. As the Court is permitting the complaint to proceed in part and the Marshals will serve the complaint upon Plaintiff's completion and return of the necessary forms, the motion to quash delay of service is dismissed as moot. As the motion was decided solely on the papers, Fed. R. Civ. P. 78, the motion to appear via telephone conference is denied.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Eighth Amendment medical care claims against the Fort Dix Medical Director and Northeast Regional Director shall proceed at this time. The rest of the claims are dismissed, and the motions are denied or dismissed as moot.  An appropriate order follows.


**March 21, 2017**                        **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          Chief U.S. District Judge